NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 7 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JERMAINE HAMPTON, | No.  22-16843 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-00578-APG-DJA |
| v. | |
| STATE OF NEVADA, CITY OF LAS VEGAS, T. EDWARD, SARAH OVERLY, STEPHANIE GETTER, D. LUNT, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Submitted June 7, 2024[**]
San Francisco, California

Before:  WALLACE, FERNANDEZ, and SILVERMAN, Circuit Judges.

Pro se Plaintiff-Appellant Jermaine Hampton appeals from the district court's

order granting a motion to dismiss filed by Defendants-Appellees Sarah Overly and

Stephanie Getler, deputy district attorneys for Clark County, and the district court's

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

order granting motions for summary judgment filed by Defendants-Appellees Detective Terry Edwards and Officer David Lunt, both of the Las Vegas Metropolitan Police Department. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review de novo a district court's dismissal of a complaint under Rule 12(b)(6)." *Patterson v. Van Arsdel*, 883 F.3d 826, 829 (9th Cir. 2018). "We review de novo a district court's ruling on a summary judgment motion." *Cottonwood Env. L. Ctr. v. Edwards*, 86 F.4th 1255, 1260 (9th Cir. 2023). "We review a decision by a district court to afford a public official or a municipality absolute or qualified immunity de novo." *Botello v. Gammick*, 413 F.3d 971, 975 (9th Cir. 2005) (collecting cases). We affirm.

1. The district court did not err in granting Overly and Getler's motion to dismiss based on prosecutorial immunity. "Officials are absolutely immune against suits under 42 U.S.C. § 1983 that arise from their performance of prosecutorial functions, even if the acts in question were committed in bad faith." *Patterson*, 883 F.3d at 829–30, citing *Imbler v. Pachtman*, 424 U.S. 409, 422–29 (1976). All of Overly and Getler's actions challenged by Hampton—filing the criminal complaint, offering him a plea agreement, opposing his motions to dismiss, suppress, and for judgment as a matter of law, seeking a greater penalty due to Hampton's criminal record, and arguing to the jury that they should convict Hampton—are quintessential acts of "advocacy" shielded by absolute immunity. *See id.* at 830, quoting *Imbler*,

2

424 U.S. at 430–31 (describing "advocacy" as actions "intimately associated with the judicial phase of the criminal process"); *id.* (providing examples of "advocacy" as "includ[ing] initiating a prosecution and presenting the state's case").

2. The district court did not err in granting summary judgment to Detective Edwards and Officer Lunt on Hampton's claimed Fourth Amendment violations due to lack of probable cause. "Probable cause . . . is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). As such, the judge issuing the warrant need only find that "under the totality of the circumstances," *United States v. Garay*, 938 F.3d 1108, 1113 (9th Cir. 2019), there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "We give great deference to an issuing judge's finding that probable cause supports a warrant and review such findings for clear error." *United States v. Fisher*, 56 F.4th 673, 682 (9th Cir. 2022) (internal quotation marks, alterations, and citations omitted).

Hampton's then-wife reported, and officers independently verified, that: (a) Hampton was a convicted felon; (b) she found a firearm in their shared dwelling that did not belong to her; (c) Hampton had referred to the firearm as "my [] gun"; and (d) she hid the gun in a specific location. The officers then independently corroborated this information through their conversations with Hampton and their search of law enforcement databases. *See United States v. Elliott*, 893 F.2d 220, 223

3

(9th Cir. 1990) ("An informant's description of illegal activity is sufficient to establish probable cause if the totality of the circumstances indicate that the tip is reliable."); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1397 (9th Cir. 1986) ("[A]n informant's reliability may be demonstrated through independent police corroboration of the information provided.").

3. The district court did not err in granting summary judgment to Officer Lunt on Hampton's excessive-force claim. "The central question in determining whether law enforcement officers violated the Fourth Amendment by using excessive force is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Andrews v. City of Henderson*, 35 F.4th 710, 715 (9th Cir. 2022) (internal quotation marks and citation omitted). "It is well-established that overly tight handcuffing can constitute excessive force." *Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004); *see Meredith v. Erath*, 342 F.3d 1057, 1061, 1063–64 (9th Cir. 2003). A district court properly grants a summary judgment motion on an excessive-force claim when a plaintiff fails to offer "medical records to support [his] claim that [he] suffered injury as a result of being handcuffed." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001). This is because this "evidence could, among other things, [] help[] to establish the force" used by the officer. *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000).

The district court correctly granted summary judgment for Officer Lunt on Hampton's excessive-force claim because Hampton did not present any records showing that he sought or received treatment for injuries caused by the handcuffing. We do not consider Exhibit G and H because "our review is limited to 'the original papers and exhibits filed in the district court,' Fed. R. App. P. 10(a)(1), and the documents [Hampton] submitted for the first time on appeal are not part of the record." *Martinez v. Newsom*, 46 F.4th 965, 975 (9th Cir. 2022). Similarly, Hampton's unsworn assertion that he complained that the handcuffs were too tight and his requests to loosen them were ignored, without more, is insufficient. *See Wall*, 364 F.3d at 1109–10 (holding triable issue where plaintiff complained of pain from overly tight handcuffing and neurologist provided declaration stating that plaintiff's injury was caused by the overly tight handcuffing). In short, "[Hampton's] conclusory allegations unsupported by factual data are insufficient to defeat [Officer Lunt's] summary judgment motion." *Arpin*, 261 F.3d at 922.

4. The district court did not err in granting summary judgment to Detective Edwards on Hampton's warrant-altering claim. Hampton did not present clearly established law putting Detective Edwards on notice that he was violating a constitutional right by correcting the surname and time on the written warrant to

5

match the surname and time the judge verbally authorized him to search.[1] *See Waid v. County of Lyon*, 87 F.4th 383, 388 (9th Cir. 2023) (internal citations omitted) ("We may address either prong [of the qualified-immunity doctrine] first, and may exercise our discretion to resolve a case only on the second ground when no clearly established law shows that the officers' conduct was unconstitutional.").

5. The district court did not err in granting summary judgment to Officer Lunt on Hampton's prolonged-handcuffing claim. Hampton did not present clearly established law putting Officer Lunt on notice that he was violating a constitutional right by placing Hampton in handcuffs for one hour and twenty minutes before the

---

[1] Neither the federal rule nor caselaw Hampton offers satisfies the clearly-established-law requirement. Federal Rule of Criminal Procedure 41 does not apply because the warrant was issued "in furtherance of an investigation into [a] state law violation[] alone" that was not "federal in character." *United States v. Artis*, 919 F.3d 1123, 1130–31 (9th Cir. 2019). *Groh v. Ramirez*, 540 U.S. 551, 552 (2004), *Maryland v. Garrison*, 480 U.S. 79, 84 (1987), and *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) merely addressed the general particularity requirement for warrants, which is not at issue here. In addition, *Brown v. Byer*, 870 F.2d 975, 978–79 (5th Cir. 1989), is both non-binding on us and distinguishable in several ways. That case involved an arrest warrant, not a search warrant. *Id.* at 976; *see Sharp v. County of Orange*, 871 F.3d 901, 913 (9th Cir. 2017) ("[I]t is not appropriate to assume that the rules of search warrants automatically apply to those of arrest warrants."). Furthermore, in *Brown*, the police obtained valid warrants for an individual with a particular name and driver's license number, and a constable then altered the name and license number on the warrants to match a different individual. 870 F.2d at 976–77. Here, the opposite occurred: Detective Edwards corrected the name and time on the warrant to *match* the name of the person and the time the judge authorized him to search.

6

search warrant was approved.[2]  *See id.*  This is particularly true when the officers were reasonably concerned about: (a) officer safety, because they were investigating a potential offense involving a firearm and Hampton's then-wife indicated he might use the firearm; and (b) Hampton fleeing, because he had a criminal history of evading police.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (stating that reasonableness is determined objectively "from the perspective of a reasonable officer on the scene" and that the reasonableness inquiry "requires careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

---

[2] The cases on which Hampton relies are distinguishable.  *See United States v. Ricardo D.*, 912 F.2d 337, 340–42 (9th Cir. 1990) (holding officers violated the Fourth Amendment when they detained a *minor without* probable cause, fear of officer safety, or fear of flight); *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994) (examining the reasonableness of an seizure during the *execution* of a search warrant, not *prior to securing* a warrant); *id.* at 876–77 (holding that officers violated the Fourth Amendment when they "remov[ed] a gravely ill and semi-naked man from his sickbed without providing any clothing or covering, and then [] forc[ed] him to remain sitting handcuffed in his living room for two hours"); *United States v. Sharpe*, 470 U.S. 675, 685–86 (1985) (holding *no* Fourth Amendment violation when officers engaged in a twenty-minute investigative detention based on reasonable suspicion and "emphasiz[ing] the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes").  Finally, while "[s]tate law requirements are relevant in assessing the reasonableness of an arrest," *Wall*, 364 F.3d at 1109–10, an officer is still entitled to qualified immunity under 42 U.S.C. § 1983 even if he violates state law.  *Cf. Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001) ("Our focus is on whether a reasonable officer would have known that the [officers'] conduct violated [plaintiff's] *federal* statutory or constitutional rights rather than merely a state law or policy provision.") (emphasis added).

others, and whether he is actively resisting arrest or attempting to evade arrest by flight").

    **AFFIRMED.**